## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CARL ENGLAND** | **CIVIL ACTION** |
| **VERSUS** | **NO.  15-0961** |
| **WARDEN BURL CAIN** | **SECTION  "F"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.    Factual Background

The petitioner, Carl England ("England"), is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On May 4, 2005, England was charged by bill of information in St. Tammany Parish with one count of aggravated burglary and one count of attempted second degree murder.[3]  He entered pleas of not guilty to the charges on June 15, 2005.[4]

The record reflects that, on February 13, 2005, Alexis Calcotes was temporarily staying at a mobile home owned by her aunt, Ella Calcotes Warren, located in a trailer park off of Gause

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 7, Bill of Information, 5/4/05.

[4]St. Rec. Vol. 1 of 7, Minute Entry, 6/15/05.

Boulevard in Slidell, Louisiana.[5]  Calcotes's friends, Tameka Jones and her boyfriend, Courtney Dufrene, were also staying in the mobile home.

In the early morning hours of February 13, 2005, Calcotes and two men returned to the trailer.  As they drove up, Calcotes saw a man, later identified as England, lying underneath the trailer with a baseball bat in his hands.  Calcotes recognized England because he was her mother's former boyfriend.  England came out from under the trailer, approached the vehicle, and began striking the window with the baseball bat.  According to Calcotes, she told the two men with her to leave England alone.  She then exited the vehicle and walked into her residence.  England apparently walked away.

As Calcotes later prepared to take a bath, she heard England beating on a window vent and trying to talk to her.  She called the police and when the police arrived around 4:30 a.m., they could not locate England or anyone else in the area.

When Calcotes finished her bath, a friend of hers named Repper stopped by the trailer. Repper told Calcotes that he had to drop off some other friends at their homes and he would return. Calcotes heard Repper talking to England outside before he left but nothing happened at that time.

Calcotes eventually fell asleep and awoke to find England on her back, attacking her and screaming at her for calling the police.  England also was screaming about how Calcotes mother had been unfaithful to him.  He then repeatedly stabbed Calcotes with a knife and hit her with a hammer before fleeing the trailer.

---

[5]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal.  *State v. England*, 994 So.2d 154 (La. App. 1st Cir. 2008) (Table); *State v. England*, No. 2008-KA-0817, 2008 WL 4764339, at *1-*4 (La. App. 1st Cir. Oct. 31, 2008); St. Rec. Vol. 3 of 7, 1st Cir. Opinion, 2008-KA-0817, pp. 2-7, 10/31/08.

Calcotes was able to call 911 to report the incident. Due to the severity of her wounds, which included stab wounds and a punctured lung, she was transported to the Medical Center of Louisiana in New Orleans. The police determined that England used a large claw hammer to pry open the back door of the trailer to gain entry.

Calcotes house-mates, Dufrene and Jones, were in the residence at the time of the attack and also were able to identify England as the attacker. A neighbor, Douglas Boos, also saw England sitting outside of the trailer, and spoke with him alone for about 20 minutes before the incident happened. Boos went into his trailer for about three or four minutes when he heard the screaming. He went outside and saw England running out of the trailer and then heard Dufrene call out that England had just attacked Calcotes.

After being found competent to assist with his defense,[6] England was tried before a jury on November 26, 27 and 28, 2007, and was found guilty as charged on both counts.[7] On November 20, 2007, the Trial Court denied England's motions for a new trial and for post-verdict judgment of acquittal.[8] The Trial Court sentenced England on December 4, 2007, to serve concurrent terms of fifteen years in prison on count one and thirty-five years in prison on count two without benefit of

---

[6]St. Rec. Vol. 1 of 7, Minute Entry, 1/31/06; Minute Entry, 5/9/06.

[7]St. Rec. Vol. 1 of 7, Trial Minutes, 11/26/07; Trial Minutes, 11/27/07; Trial Minutes, 11/28/07; Jury Verdict (count 1), 11/28/07; Jury Verdict (count 2), 11/28/07; St. Rec. Vol. 2 of 7, Trial Transcript, 11/26/07; Trial Transcript, 11/27/07; St. Rec. Vol. 3 of 7, Trial Transcript (continued), 11/27/07; Trial Transcript, 11/28/07.

[8]St. Rec. Vol. 1 of 7, Minute Entry, 11/30/07; Motion for New Trial, 11/30/07; Motion for Post-Verdict Judgment of Acquittal, 11/30/07.

parole, probation or suspension of sentence.[9]  The  Trial Court also denied England's motion to reconsider the sentence.[10]

On direct appeal to the Louisiana First Circuit Court of Appeal, England's appointed counsel asserted two errors:[11] (1) the Trial Court erred in failing to grant the motion for post-verdict judgment of acquittal based on insufficient evidence; and (2) the Trial Court erred in failing to grant the mistrial motion.  On October 31, 2008, the Louisiana First Circuit affirmed England's convictions and sentences finding no merit in the claims raised.[12]

On December 10, 2008, England signed and untimely[13] submitted a writ application to the Louisiana Supreme Court seeking review of the appellate court's ruling.[14]  The Supreme Court denied the writ application without stated reasons on October 16, 2009.[15]

In the meantime, on May 29, 2009, the State filed a multiple bill charging England as a third felony offender.[16]  At a hearing held on April 8, 2010, the Trial Court adjudicated England to be a

---

[9]St. Rec. Vol. 1 of 7, Sentencing Minutes, 12/4/07; St. Rec. Vol. 3 of 7, Sentencing Transcript, 12/4/07.

[10]St. Rec. Vol. 1 of 7, Sentencing Minutes, 12/4/07; Motion to Reconsider Sentence, 12/4/07.

[11]*England*, 2008 WL 4764339, at *1; St. Rec. Vol. 3 of 7, 1st Cir. Opinion, 2008-KA-0817, p. 2, 10/31/08.

[12]*Id.*

[13]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's decision to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.  St. Rec. Vol. 3 of 7, Notice of Judgment, 10/31/08; St. Rec. Vol. 5 of 7, La. S. Ct. Writ Application, 09-KH-176, 1/26/09 (dated 12/10/08).

[14]St. Rec. Vol. 5 of 7, La. S. Ct. Writ Application, 09-KH-176, 1/26/09 (dated 12/10/08); La. S. Ct. Letter, 2009-KH-176, 1/27/09 (showing postal meter 12/15/08).

[15]*State ex rel. England v. State*, 19 So.3d 475 (La. 2009); St. Rec. Vol. 5 of 7, La. S. Ct. Order, 2009-KH-0176, 10/16/09.

[16]St. Rec. Vol. 3 of 7, Multiple Bill, 5/29/09.

second felony offender.[17]   The Trial Court vacated the original sentence on count two and resentenced England to serve forty (40) years in prison at hard labor without benefit of parole, probation, or suspension of sentence.[18]

On appeal from this proceeding, England's appointed counsel argued that the Trial Court erred when it denied the motion to quash the multiple bill as untimely filed.[19]   England was granted leave to file a pro se supplemental brief and failed to do so.[20]   On February 11, 2011, the Louisiana First Circuit affirmed England's multiple offender adjudication and sentence finding no merit in the claim raised.[21]

The Louisiana Supreme Court also denied England's subsequent writ application without stated reasons on September 23, 2011.[22]   Under federal habeas law, England's convictions and sentences became final ninety (90) days later, on December 22, 2011, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1); *see also Burton v. Stewart*, 549 U.S. 147 (2007) (finding in a criminal case, judgment includes conviction and sentence,

---

[17]St. Rec. Vol. 1 of 7, Multiple Bill Hearing Minutes, 4/8/10; St. Rec. Vol. 3 of 7, Multiple Bill Hearing Transcript, 4/8/10.

[18]*Id*.

[19]St. Rec. Vol. 7 of 7, Appeal Brief, 2010-KA-1246, 8/9/10.

[20]St. Rec. Vol. 7 of 7, Motion to File Supplemental Brief, 8/25/10; 1st Cir. Order, 2010-KA-1246, 9/27/10.

[21]*State v. England*, 57 So.3d 609 (La. App. 1st Cir. 2011) (Table); *State v. England*, No. 2010-KA-1246, 2011 WL 2119910, at *1 (La. App. 1st Cir. Feb. 11, 2011); St. Rec. Vol. 4 of 7, 1st Cir. Opinion, 2010-KA-1246, 2/11/11.

[22]*State v. England*, 69 So.3d 1156 (La. 2011); St. Rec. Vol. 5 of 7, La. S. Ct. Order, 2011-KO-0456, 9/23/11; La. S. Ct. Writ Application, 11-KO-456, 3/4/11 (dated 3/1/11); St. Rec. Vol. 4 of 7, La. S. Ct. Letter, 2011-KO-456, 3/4/11 (showing postal meter 3/2/11).

therefore the AEDPA "limitations period did not begin until both his conviction and sentence 'became final by the conclusion of direct review or the expiration of the time for seeking such review,'" citing 28 U.S.C. § 2244(d)(1)(A)).

Eight months later, on August 23, 2012, England signed and submitted to the Trial Court an application for post-conviction relief asserting the following grounds for relief:[23] (1) counsel was ineffective when he failed to prepare a proper defense and failed to subpoena a relevant eyewitness named Bird; (2) trial counsel was ineffective for failing to hold a hearing pursuant to *Daubert v. Merill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1983), on the expertise of Dr. John Thompson in the science of psychology; (3) trial counsel was ineffective for waiving a contradictory hearing to have Dr. Thompson appear in violation of petitioner's right to confront and cross-examine witnesses against him; and (4) counsel was ineffective for allowing petitioner, an African-American, to stand trial before an all white jury.

After receiving procedural objections from the State, on December 12, 2012, the Trial Court denied the application finding that it was not timely filed, it raised claims challenging the multiple offender adjudication and sentence which were not proper for post-conviction review, and it raised issues repetitive of those considered on direct appeal.[24]  On review of that order, on April 10, 2013, the Louisiana First Circuit remanded the matter for the Trial Court to consider the application as if

---

[23]St. Rec. Vol. 4 of 7, Application for Post Conviction Relief, 8/27/12 (dated 8/23/12).

[24]St. Rec. Vol. 4 of 7, Trial Court Judgment, 12/12/12; Trial Court Reasons for Judgment, 12/12/12; State's Answer, 10/10/12; Traverse, 10/24/12.

timely filed.[25]  After receiving additional briefing, the Trial Court denied the application as meritless

on September 16, 2013.[26]

England did not immediately seek review of this ruling.  Instead, over two months later, on

November 19, 2013, he submitted to the Trial Court a notice of intent to seek review, and was

granted until December 22, 2013, to do so.[27]  On March 21, 2014, the Louisiana First Circuit denied

England's related application without stated reasons.[28]  The Louisiana Supreme Court also denied

England's subsequent writ application without stated reasons on February 13, 2015.[29]

## II.   Federal Habeas Petition

On March 27, 2015, the Clerk of this Court filed England's petition for federal habeas corpus

relief in which he asserted the following grounds for relief:[30] (1) the Trial Court erred when it denied

the motion to quash the multiple bill as untimely filed; (2) the Trial Court erred in denying

petitioner's application for post-conviction relief when it failed to rule on the merits of the claims

in violation of state and federal law; (3) trial counsel was ineffective for failing to hold a *Daubert*

hearing on the expertise of Dr. Thompson in the science of psychology; (4) trial counsel was

---

[25]St. Rec. Vol. 4 of 7, 1st Cir. Order, 2013-KW-0119, 4/10/13; St. Rec. Vol. 7 of 7, 1st Cir. Writ Application, 2013-KW-0119, 1/11/13 (dated 1/9/13).

[26]St. Rec. Vol. 4 of 7, Trial Court Judgment, 9/16/13; Trial Court Reasons for Judgment, 9/16/13; State's Answer, 6/11/13; Objections to State's Answer, 7/17/13 (dated 7/7/13).

[27]St. Rec. Vol. 4 of 7, Notice of Judgment, 9/16/13; Notice of Intent, 11/25/13 (dated 11/19/13); Trial Court Order, 11/27/13.

[28]St. Rec. Vol. 4 of 7, 1st Cir. Order, 2013-KW-2092, 3/21/14; St. Rec. Vol. 5 of 7, 1st Cir. Writ Application, 2013-KW-2092, 11/27/13 (dated 11/26/13).

[29]*State ex rel. England v. State*, 158 So.3d 831 (La. 2015); St. Rec. Vol. 6 of 7, La. S. Ct. Order, 2014-KH-0747, 2/13/15; La. S. Ct. Writ Application, 14-KH-747, 4/10/14 (dated 4/7/14); St. Rec. Vol. 4 of 7, La. S. Ct. Letter, 2014-KH-747, 4/10/14.

[30]Rec. Doc. No. 1.

ineffective for waiving a contradictory hearing to have Dr. Thompson appear in violation of petitioner's right to confront and cross-examine witnesses against him; and (5) trial counsel was ineffective for allowing petitioner, an African-American, to stand trial before an all white jury.

The State filed an answer and memorandum in opposition to the petition arguing that England did not timely file his federal petition and otherwise failed to exhaust state court remedies as to one of the claims raised.[31]  In the alternative, the State also argues that the claims raised are without merit.

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[32] applies to this petition, which is deemed filed in this Court by England under the federal mailbox rule on March 25, 2015.[33]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th

---

[31]Rec. Doc. Nos. 12, 13.

[32]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[33]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The Clerk of Court filed England's federal habeas petition on March 27, 2015, when it was received.  England dated his signature on the form petition on March 24, 2015.  Rec. Doc. No. 1, p. 15.  However, the official stamp of the prison's Legal Programs Department reflects that England delivered the pleadings to that office on March 25, 2015, for electronic submission to this Court, which was done that day.  Rec. Doc. No. 1, p.17.

Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  As indicated above, the State argues that England's petition was not timely filed under the AEDPA and review of one claim was not exhausted in the state courts.  For the following reasons, the State's defenses must be rejected.

### A.    England's Federal Petition is Timely

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.  *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001).  Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).

The State bases its limitations defense on the conclusion that England's writ application submitted to the Louisiana First Circuit on November 26, 2013, was untimely filed and did not interrupt the one-year AEDPA filing period.  This reasoning, however, is contrary to the precedent in this circuit.[34]

The record demonstrates, and the State concedes, that England allowed 244 days from finality of his conviction on December 22, 2011, to pass before submitting his application for post-conviction relief to the Trial Court on August 23, 2012.  The Trial Court ultimately denied the application as meritless on September 16, 2013.

---

[34]The Court is aware that the United States Supreme Court has clearly and emphatically resolved that "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (quoting *Carey v. Saffold*, 536 U.S. 214, 226 (2002)).  However, the United States Fifth Circuit has not reconciled or found conflict with that ruling and the mandates in *Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001) and *Grillette v. Warden, Winn Correctional Center*, 372 F.3d 765, 769-70 (5th Cir. 2004) which resolve that under La. App. Rule 4-3, the Louisiana intermediate appellate court must be make apparent that untimeliness was the basis for denial of relief or refusal to consider the writ application otherwise even an untimely filing tolls the AEDPA filing period.

Under Louisiana law, England had thirty-days, or until October 16, 2013, to timely file a writ application with the Louisiana First Circuit.  La. App. Rule 4-3.  England did not meet this deadline and technically, his post-conviction application was no longer pending for tolling of the AEDPA filing period.  In addition, after the passing of that date, the state trial court had no authority to extend the Rule 4-3 deadline.  *See Carter v. Rhea*, 785 So.2d 1022 (La. App. 4th Cir. 2001) (finding trial court has no authority to grant a delay or extension for filing an application for supervisory writs under La. App. Rule 4-3 once the 30-day period has expired).  However, when England sought an untimely extension (i.e. filed an untimely notice of intent), the Trial Court set a return date of December 22, 2013.  This order effectively granted England an extension, and he submitted his writ application within that extended period on November 26, 2013.  *See Dixon v. Cain*, 316 F.3d 553, 554 (5th Cir. 2003) (concluding when a petitioner requests a return date to seek supervisory review and the trial court sets a return date outside the 30-day time period provided by La. App. Rule 4-3, the state court has effectively granted the petitioner an extension of time to file his writ application).

Although England's late-filed application for supervisory review in the intermediate appellate court was untimely under Rule 4-3, the filing of the application within the extended period granted by the state trial court effectively revived the proceedings and, as a result, is considered to have interrupted the AEDPA limitations period.  *See Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).  In this circuit, the courts have interpreted La. App. Rule 4-3 to require that the intermediate state appellate court have given "some level of judicial review" to even untimely filed writ application unless the appellate court clearly denies relief based on untimeliness.  *See Melancon*, 259 F.3d at 405.

In England's case, the Louisiana First Circuit simply indicated "writ denied" without any reference to the apparent untimely filing of the writ application itself. *See Grillette v. Warden, Winn Correctional Center*, 372 F.3d 765, 769-70 (5th Cir. 2004) (finding that Louisiana courts routinely indicate when the denial of an application is based on untimeliness). Therefore, the AEDPA limitations period remained tolled during the time that writ application and the subsequent timely writ application in the Louisiana Supreme Court were pending.

Thus, England's late-filed writ application in the Louisiana First Circuit must be considered to have been "pending" for consideration before that court in a manner that tolled the running of the AEDPA one-year limitations period through the ultimate resolve of the related writ application in the Louisiana Supreme Court. Including this tolling into the AEDPA calculation, England's federal petition was timely filed.

### B.   England Exhausted State Court Remedies as to Claim No. 2

The State contends that England failed to exhaust state court remedies as to his second claim, in which he states that the Trial Court erred in failing to rule on the merits of his post-conviction issues. The State argues that the claim was raised before the Louisiana Supreme Court and was not raised before the Louisiana First Circuit, placing it in an improper procedural posture.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court in a procedurally proper manner. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

In the instant case, England achieved complete review of each of his post-conviction claims. As outlined above, the state trial court initially denied his post-conviction application as untimely filed, also citing other procedural defaults. England sought review of that ruling and the Louisiana First Circuit, under Appeal No. 2013-KW-0119, where he argued (as he does in this federal petition) that the merits of his claims should be reviewed as timely because of the delay caused by his multiple offender proceedings. In doing so, England presented the same argument addressed in his application for post-conviction relief which in that pleadings was identified as his first claim of ineffective assistance of counsel (challenging counsel's failure to investigate and call an eyewitness named Bird). The Louisiana First Circuit granted his writ application finding error in the Trial Court's timeliness calculation. The Circuit Court remanded the writ application to the Trial Court for consideration of the merits, and the Trial Court denied the application finding the claims to be meritless.

When England again sought review, the Louisiana First Circuit under a different case number, Appeal No. 2013-KW-2092, denied the writ application without stated reasons. In that writ

application, England presented each of his post-conviction claims including the ineffective assistance of counsel claim based on the failure to investigate and call an eyewitness named Bird.

England then filed a writ application to the Louisiana Supreme, seeking review of the entirety of the post-conviction process including the Trial Court's initial ruling based on untimeliness and the subsequent ruling on the merits. In that application, England re-captioned his first ineffective assistance of counsel claim to read that the Trial Court erred in failing to review his post-conviction application on the merits. Despite the caption, the arguments are almost verbatim to those raised in his post-conviction application, both writ applications to the Louisiana First Circuit, and the writ application to the Louisiana Supreme Court.

Whatever the motivation for changing the caption of his ineffective assistance of counsel claims, the record indicates that England gave each level of the state courts the opportunity to consider the same arguments and legal theories on that aspect of his ineffective assistance of counsel claim now presented to this federal court. Even if a reviewing court were to disagree, because England's claim is without merit and otherwise do not entitle him to federal habeas relief, the Court can proceed to discuss the substance of even an unexhausted claim. 28 U.S.C. § 2254(b)(2).

## IV.    **Standards of Review on the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2)

(2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it

correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## V.    Denial of the Motion to Quash the Multiple Bill (Claim No. 1)

England alleges that the state trial court erred in denying the motion to quash the multiple bill because it was not timely filed by the prosecution. The State, on the other hand, contends that this is an issue of state law not cognizable under federal habeas review.

15

England raised this issue on direct appeal from the multiple offender proceedings. The Louisiana First Circuit, in the last reasoned state court decision, considered the reasons stated by the Trial Court in denying the motion to quash and found that the multiple bill was filed within a reasonable time in accordance with Louisiana law. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (finding when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

As urged by the State there is no cognizable federal question regarding the timeliness of a state habitual offender proceeding. Louisiana law also does not provide a prescriptive period for the bringing of a habitual offender proceeding under La. Rev. Stat. Ann. § 15:529.1(D)(1)(a). *See State v. Muhammad*, 875 So.2d 45, 52 (La. 2004); *State v. Thompson*, 539 So.2d 1008, 1010 (La. App. 4th Cir. 1989). The law of the state requires only that the proceeding be brought within a reasonable period of time to be determined on a case-by-case basis. *State v. Toney*, 842 So.2d 1083, 1085 (La 2003); *State v. Anderson*, 788 So.2d 561 (La. App. 5th Cir. 2001). The determination of this issue of reasonableness under the state statute does not invoke federal constitutional protections but is instead a discretionary application of state law.

In England's case, the Louisiana courts determined that the habitual offender proceedings were initiated in a timely manner under the governing state law. The United States Supreme Court instructs that federal habeas courts do not sit to reevaluate a state court's interpretation or application of its own state laws. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law). England is not entitled to federal habeas relief on this issue.

16

**VI.**     **Effective Assistance of Counsel (Claim Nos. 2-5)**

England alleges that he received ineffective assistance of counsel on four grounds: (1) trial counsel failed to investigate and present a proper defense and failed to subpoena a known eyewitness named Bird; (2) trial counsel failed to hold a *Daubert* hearing on the expertise of Dr. Thompson in the science of psychology; (3) trial counsel waived a contradictory hearing to have Dr. Thompson appear in violation of petitioner's right to confront and cross-examine witnesses against him; and (4) trial counsel allowed petitioner, an African-American, to stand trial before an all white jury. The State argues that the state courts' denial of relief was not contrary to or an unreasonable application of federal law.

As discussed above, England raised each of these issues to the state courts and, in the last reasoned decision, relief was denied on the merits finding the claims to be conclusory and without merit. *Ylst*, 501 U.S. 797. The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

The Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984), is the appropriate standard for judging the performance of counsel. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both

17

prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness,'" quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not

whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (quoting *Knowles*, 556 U.S. at 121 n.2) (citing *Strickland*, 466 U.S. at 689).

A. **Failure to Investigate, Present a Defense, and Eyewitness Testimony**

England alleges that his appointed public defender was overworked and failed to visit with him as part of the investigation of the case in order to establish a proper defense. He argues that, had counsel consulted with him, he would have known to investigate the lack of evidence at the scene of the crime and to interview witnesses such as Repper and his two friends who fought with England at the trailer, and Bird, who gave him a ride home after the fight. England further argues that proper investigation could have found support for his version that Calcotes and Repper beat him up, because Repper was in a jealous rage because of Calcotes's "whorish" ways and because she had a criminal history and a known drug addiction.

As an initial matter, England's broad references to the workload and funding of the St. Tammany indigent defender's office are not relevant to this Court's analysis under *Strickland*. England instead must show that his counsel's actual representation was deficient and prejudicial to the outcome of his case. For the reasons that follow, England has not met this burden.

It is well settled that a habeas petitioner cannot show prejudice with respect to a claim that counsel failed to investigate a defense without adducing what the investigation would have shown.

20

*Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696 (recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different")).  Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed.  *See Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998); *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

England has not pointed to any particular exculpatory information that counsel could have obtained from further investigation of the crime scene or the known witnesses.  His otherwise superficial argument provides no reason to undermine the deference due to his counsel's trial decisions or the denial of relief on this issue by the state courts.  *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").  As resolved by the state courts, England's conclusory allegations are not sufficient to establish a deficiency in counsel's performance.  *Moawad*, 143 F.3d at 948.

Furthermore, the information England mentions, such as the victim's criminal history, the alleged fight with Repper, and the DNA evidence, were all known and pursued by his counsel at trial.  England nevertheless suggests that counsel should have presented more testimony or pursued cross-examination differently to perhaps taint the credibility of the victim and her friends.  It is well settled, however, that "the presentation of testimonial evidence is a matter of trial strategy."  *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  In contradiction to England's arguments, defense counsel zealously challenged

each aspect of the inculpatory evidence presented by the state and presented an extensive defense based on England's versions of the events that night.  For example, in an effort to exclude England as the attacker, defense counsel provided evidence and expert testimony to establish that England's DNA was not identifiable in the blood samples taken from the victim's clothing seized by the police. Defense counsel also vigorously questioned Calcotes about her relationship with Repper and whether she, Repper, and others attacked and beat England at the trailer on the night in question.

In spite of counsel's efforts, however, the jury also heard the testimony of another, unbiased witness, Douglas Boos, a neighbor in the trailer park.  Boos testified that he spoke with England outside of Calcotes trailer around 8:00 a.m.[35]  Significantly, Boos also testified that he and England were alone, i.e. the only two people outside of the trailer just prior to the attack.  After returning to his trailer for just a few minutes, Boos stepped outside to hear screams and see England come running out of Calcotes trailer after having attacked her.  Boos testified that, when England ran off, the only people at the scene were the three occupants of Calcotes's trailer.

In this case, the jury simply did not believe England to be a victim rather than the attacker. The fact that the defense or the defense strategy was not successful does not render counsel's performance constitutionally deficient.  *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689 (citations omitted).

---

[35]St. Rec. Vol. 2 of 7, Trial Transcript, pp. 376-78, 11/27/07.

England also has not established that counsel was ineffective for failing to call the person identified only as Bird as a witness to somehow support his version that he was beaten by Calcotes and Repper.  As an initial matter, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'"  *Graves*, 351 F.3d at 156 (quoting *Buckelew*, 575 F.2d at 521).  In addition, the federal courts have long recognized that the "'[f]ailure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'"  *Williams v. Cockrell*, 31 F. App'x 832, 2002 WL 180359, at *3 (5th Cir. Jan. 4, 2002) (brackets in original) (quoting *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)).  Counsel is given great deference in deciding not to call a witness who may have testified differently than anticipated or whose testimony would have been cumulative.  *Lema v. United States*, 987 F.2d 48, 54 (1st Cir. 1993) (citations omitted) ("Where the prosecution's case is less than compelling . . ., the risk of 'rocking the boat' may warrant a decision by trial counsel to forego the presentation of further defense testimony, even favorable testimony.")

Here, England suggests that Bird would have testified that England had been beaten by Calcotes and Repper when he picked England up on the morning in question.  However, England fairly concedes that Bird was not present at the scene of the attack or the trailer park and instead only met up with him on the road as England ran from the scene.  Bird then could have only testified to what England told him, information that likely would not have been admissible or relevant to the events that occurred at 8:00 a.m.  Thus, counsel's strategic decision not to search out or subpoena Bird was reasonable under the circumstances.

Based on the foregoing, England has failed to establish that counsel's performance was deficient or prejudicial. The state courts' denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.

**B.      Failure to Request a *Daubert* Hearing and Waiver of the Hearing**

England argues that trial counsel provided ineffective assistance when he waived a contradictory hearing on the issue of his sanity and failed to request a hearing pursuant to *Daubert*, 509 U.S. at 579, on the qualifications of one of the lunacy commission doctors, Dr. Thompson. The State argues that the state courts did not rule contrary to federal law.

England asserted these arguments in his state post-conviction application in the state trial court, and the Court denied relief finding that England failed to prove that his counsel acted deficiently. This was the last reasoned opinion on the claims. *Ylst*, 501 U.S. at 802.

The record in this case reflects that, on November 17, 2005, England's appointed counsel filed a motion for a hearing to determine England's mental condition to assist counsel in the defense.[36] With regard to a defendant's competency to assist counsel with the defense, the Constitution prohibits trial and conviction of a criminal defendant who is mentally incompetent to assist with his defense. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *Drope v. Missouri*, 420 U.S. 162, 171-172 (1975); *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Carter v. Johnson*, 131 F.3d 452, 459 (5th Cir. 1997).

To make that determination, the state trial court appointed Rafael Salcedo, Ph.D., and John Thompson, M.D., to evaluate England.[37] Under Louisiana law, the doctors were to evaluate England

---

[36]St. Rec. Vol. 1 of 7, Motion for Hearing to Determine Defendant's Mental Condition, 11/17/05.

[37]St. Rec. Vol. 1 of 7, Trial Court Order, 11/17/05.

under the standards set forth by the Louisiana Supreme Court in *State v. Bennett*, 345 So.2d 1129

(La. 1977):

> The decision as to a defendant's competency to stand trial should not turn solely upon whether he suffers from a mental disease or defect, but must be made with specific reference to the nature of the charge, the complexity of the case and the gravity of the decisions with which he is faced. Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused's ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.

*Id*. at 1138 (citations omitted); *see also*, *State v. Silva*, 699 So.2d 487, 490-491 (La. App. 4th Cir.

1997).

This standard is consistent with the longstanding two-part test recognized by the United

States Supreme Court for ascertaining competency to assist in the defense and to stand trial:

(1) whether the petitioner has the sufficient present ability to consult with his attorney with a

reasonable degree of rational understanding; and (2) whether he has a rational and factual

understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 402 (1960).

Dr. Salcedo appeared before the Trial Court to discuss his evaluation report at a hearing held on January 31, 2006.[38]  Because Dr. Thompson was unavailable and had not yet evaluated England, the Trial Court postponed the proceedings.[39]  At the second hearing, held on May 9, 2006, the State and defense counsel stipulated that each of the doctors' testimony would be the same as their individual written reports finding England competent.[40]  Considering the doctors' reports and conclusions, the Trial Court found England competent to proceed and the matter proceeded to trial.

England does not actually challenge the conclusions reached by the Trial Court or any aspect of the report and conclusions issued by Dr. Salcedo regarding his competency to proceed.  His focus instead is on his counsel's stipulation to Dr. Thompson's report and his failure to request a *Daubert* hearing on Dr. Thompson's qualifications as an expert in psychology.  He claims that his counsel erred in stipulating to Dr. Thompson's report rather than proceeding to a hearing where his testimony could be challenged.

A finding of competency to stand trial is a fact determination entitled to a presumption of correctness.  *Miller v. Fenton*, 474 U.S. 104, 113 (1985).  To show that incompetence existed, a petitioner would have to demonstrate facts "'sufficient to positively, unequivocally and clearly generate a real, substantial and legitimate doubt' as to his mental competence at the time of trial." *Dunn v. Johnson*, 162 F.3d 302, 306 (5th Cir. 1998).  England has not presented any such basis for the competency finding to have been questioned by his counsel or any reason for his counsel to compel a hearing to review the resolutions and findings made by Dr. Thompson in his report.  To

---

[38]St. Rec. Vol. 1 of 7, Minute Entry, 1/31/06.

[39]*Id.*

[40]St. Rec. Vol. 1 of 7, Minute Entry, 5/9/06.

be clear, the record does not indicated that counsel stipulated to England's competency; instead, counsel simply stipulated that Dr. Thompson would testify the same as the information contained in his report.  The competency determination was ultimately made by the Trial Court.

Nevertheless, England has not established that counsel acted ineffectively when he entered into that stipulation.  Counsel's decisions to stipulate to the reports provided by the doctors was within the bounds of reasonable performance.

Furthermore, as resolved by the state courts, a *Daubert* hearing was not necessary and counsel was not required to request that one to be held.  In *Daubert*, the United States Supreme Court supplanted the "general acceptance" standard of expert testimony with a standard that charges the trial court to act as "gatekeeper" ensuring the relevance and reliability of scientific expert testimony.  *Daubert*, 509 U.S. at 592.  Once that testimony is admitted at trial, it is for the jury to resolve the credibility and the reliability of the expert's testimony.  "'[A]s a general rule, questions relating to the bases and sources of an expert's opinion affect the <u>weight</u> to be assigned that opinion rather than its <u>admissibility</u> and should be left for the jury's consideration.'" *Primrose Operating Co. v. Natl. American Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (emphasis in original) (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

There is no legal precedent that would specifically apply these gatekeeping duties as a constitutional matter for habeas corpus purposes to the pretrial assessment of doctors assigned to a sanity commission or their findings outside of a trial setting.  Assuming *Daubert* could apply, an expert's opinion must have a "reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592.  "As long as some reasonable indication of qualifications is adduced, the

court may admit the evidence without abdicating its gate-keeping function." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999) (citing *Daubert*, 509 U.S. at 596).

Generally, a physician's knowledge, training, and education in the fields of medicine will be sufficient predicate to allow the physician to testify, even outside his area of specialty. *United States v. Viglia*, 549 F.2d 335, 337 (5th Cir. 1977). "Under the general principles of evidence law, [a physician] is qualified to give a medical opinion as to [a person's] mental state . . .." *Sprague v. Brown*, 812 F.2d 1226, 1232 (9th Cir. 1987). *Daubert* is clear that critiques of the substance of an expert's testimony and conclusions go to the weight of the testimony, not its admissibility. *See United States v. Valencia*, 600 F.3d 389, 421 (5th Cir. 2010).

The Louisiana Supreme Court has adopted the *Daubert* analysis, *State v. Foret*, 628 So.2d 1116, 1121, 1123 (La. 1993), in instances where the methodology used by an expert is being questioned. *Dinett v. Lakeside Hospital*, 811 So.2d 116, 119 (La. App. 4th Cir. 2002). However, this is not the challenge being made by England in this case. Instead, England is challenging the constitutional effectiveness of his counsel's failure to question the qualifications of Dr. Thompson. He has not shown a reasons for counsel to have done so.

The Trial Court appointed Dr. Salcedo and Dr. Thompson pursuant to the statutory provisions applicable to sanity commissions in La. Code Crim. P. art. 644(A) which provides:

> The sanity commission shall consist of at least two and not more than three members who are licensed to practice medicine in Louisiana, who have been in the actual practice of medicine for not less than three consecutive years immediately preceding the appointment, and who are qualified by training or experience in forensic evaluations. The court may appoint, in lieu of one physician, a clinical psychologist or medical psychologist who is licensed to practice psychology in Louisiana, who has been engaged in the practice of clinical or counseling psychology for not less than three consecutive years immediately preceding the appointment, and who is qualified by training or experience in forensic evaluations.

England has not established that either of the commission doctors failed to meet the qualifications necessary to be on his sanity commission or that counsel had any reason to question their qualifications. The record before the Court does not contain a curriculum vitae for either of the doctors. However, the Court's research reflects that Dr. Thompson is a medical doctor and has been accepted as an expert in forensic psychiatry and has participated on sanity commissions by appointment of Louisiana courts since at least 1997. *See*, *e.g.*, *State v. Griffin*, 2015 WL 303519, No. 2014-KA-0730, at *1, *3, *4 (La. App. 1st Cir. Jan. 22, 2015); *State v. Adams*, No. 2009-KA-2015, 2010 WL 1838308, at *1, *6 (La. App. 1st Cir. May 7, 2010); *State v. Orange*, 845 So.2d 570, 575 (La. App. 1st Cir. 2003); *State v. Levy*, 700 So.2d 1283, 1284 (La. App. 1st Cir. 1997). These considerations establish that Dr. Thompson met the criteria under state law to be a member of the sanity commission, and as a medical doctor, he was otherwise qualified to render an opinion on England's mental state.

The cases also establish that Dr. Salcedo, a Ph.D. and forensic psychologist, has participated as a member of numerous sanity commissions and has qualified as a forensic psychology expert in Louisiana courts dating back at least to 1996. *See*, *e.g.*, *State v. Carson*, No. 2009-KA-1577, 2010 WL 559731, at *1 (La. App. 1st Cir. 2010); *State v. Laviolette*, 943 So.2d 527, 529 (La. App. 5th Cir. 2006); *State v. Preston*, 752 So.2d 211, 220 (La. App. 4th Cir. 1999); *Levy*, 700 So.2d 1283. This history of education and performance establishes that he too met the criteria under state law to participate on England's sanity commission.

The backgrounds and reported experience of the two doctors left no reason for England's counsel to question the qualifications of either doctor to participate on the commission or to challenge Dr. Thompson's expertise in forensic psychology. In addition, under Louisiana law, the

"[s]election of physicians to serve on a sanity commission rests within sound discretion of the trial judge." *State v. Raines*, 101 So.3d 593, 603 (La. App. 3rd Cir. 2012) (internal quotations omitted) (quoting *State v. Vince*, 305 So.2d 916, 919 (La. 1974)).  Counsel would have had no basis under Louisiana law to challenge the court's decision to select Dr. Thompson or Dr. Salcedo for the commission.  Counsel is not required to make frivolous or futile motions or objections.  *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). "The failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

England has failed to establish that his counsel acted outside of reasonable performance or caused any prejudice to the defense in failing to request a *Daubert* hearing to challenge the qualifications of Dr. Thompson as an expert in forensic psychiatry.  The denial of relief on his ineffective assistance of counsel claim was not contrary to or an unreasonable application of *Strickland*.  England is not entitled to relief.

      **C.**      <u>**Selection of an all White Jury**</u>

England argues that his trial counsel should not have allowed him, as an African-American, to stand trial before an all-white jury.  He also suggests that references dating back into the 1800's demonstrate that racial discrimination was a substantial and motivating factor behind Louisiana's laws allowing a non-unanimous verdict, and counsel failed to object to the verdict on the attempted second degree murder count on equal protection grounds.  He further contends that counsel erred in failing to object to the empaneling of an all-white jury as lacking a cross-section of petitioner's peers.

As an initial matter, England has failed to establish any reason for counsel to have challenged the non-unanimous verdict. England essentially claims that Louisiana law is unconstitutional under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution where it permits conviction in felony cases based upon non-unanimous jury verdict where capital punishment will not be imposed, for example La. Const. Art. 1, § 17 and related state case law. As a result, he suggests that counsel should have objected to the verdict to protect his constitutional rights.

However, the long-standing and well established United States Supreme Court precedent applicable to this claim is directly contrary to England's argument. In *Apodaca v. Oregon*, 406 U.S. 404 (1972), and *Johnson v. Louisiana*, 406 U.S. 356 (1972), the Supreme Court upheld the constitutionality of state laws, including that in Louisiana, which permitted criminal defendants to be convicted by less than unanimous votes of the jury. The Supreme Court has made clear that, "although the Sixth Amendment right to trial by jury requires a unanimous verdict in federal criminal trials, it does not require a unanimous verdict in state criminal trials." *McDonald v. City of Chicago*, 561 U.S. 742, 765 n.14 (2010); *Hoover v. Johnson*, 193 F.3d 366, 369 (5th Cir. 1999).

While England's scholarly references may call for the Supreme Court's holdings in *Apodaca*/*Johnson* to be reconsidered, abandoned or changed, that is not the function of this Court nor is any of it a reason for his counsel to object to the lawful verdict reached by the jury in his case. England has not shown that counsel acted deficiently or prejudicially when he did not urge an objection that had no basis or foundation in the law. *See Cockrell*, 306 F.3d at 255; *Clark*, 19 F.3d at 966.

England has also failed to present a basis for counsel to have challenged the racial composition of the jury selected in his case, which he represents to have been twelve whites and one

black alternate.  The Supreme Court has held that the Sixth Amendment requires that, in criminal trials, "venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof."  *Duren v. Missouri*, 439 U.S. 357, 363-64 (1979); *Taylor v. Louisiana*, 419 U.S. 522, 527, 538 (1975).   However, "[d]efendants are not entitled to a jury of any particular composition."  *Taylor*, 419 U.S. at 538.  The law is clear that "[d]efendants are not entitled to a jury, jury wheel, pool of names, panel, or venire of any particular composition, and there is no requirement that those bodies 'mirror the community and reflect the various distinctive groups in the population.'"  *Hearn v. Cockrell*, 73 F. App'x 79, 2003 WL 21756441, at *1, *6 (5th Cir. Jun. 23, 2003) (quoting *Taylor*, 419 U.S. at 538), *cert. denied*, 540 U.S. 1022 (2003).  Thus, to establish a constitutionally improper jury, a petitioner must show that the alleged under-representation was the result of a systematic effort to exclude a distinctive group.  *Hearn*, 2003 WL 21756441, at *6; *Batson v. Kentucky*, 476 U.S. 79 (1986).

In this case, England makes no argument or even a suggestion that his counsel had reason to believe that any group of persons was systematically excluded from the panel.  He simply complains that he was tried before an all-white jury.  As the Supreme Court has held, however, he was not entitled to a jury of any particular composition and no right of his was violated by the mere happenstance of the jury's ultimate makeup.

The record also does not disclose any basis for counsel to have urged an objection during voir dire or upon completion of the selection process.  England points to no discriminatory motive or practice during the selection process and the record does not reflect any systematic manipulation of the venire.  For these reasons, England has failed to establish that his counsel had any legal reason to challenge the composition of the jury or that he acted in a ineffective way.

The state courts' denial of relief on these issues was not contrary to or an unreasonable application of *Strickland*.  England is not entitled to relief.

## VIII.   <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that England's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[41]

New Orleans, Louisiana, this 18th day of August, 2015.

_____
    **KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[41]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.